## A97A1711. MORROW v. THE STATE.
(493 SE2d 616)

McMURRAY, Presiding Judge.

Defendant was tried before a jury and found guilty of three counts of violating the Georgia Controlled Substances Act (Counts 3, 4, and 5) for two sales of cocaine and for possession of cocaine with the intent to distribute. The evidence adduced at his jury trial revealed that Detective J. B. Lamphier with the City of Duluth Police Department identified State's Exhibit 3 as "that substance [Detective Lamphier purchased] from [defendant] over in what [is sometimes] referred to as the Carver Circle area in an investigation," on January 31, 1994. Similarly, State's Exhibit 4 was identified as coming "[f]rom a purchase from [defendant] at the Carver Circle area," on February 16, 1994. A videotape of one sale with audio was identified by Detective Lamphier and played for the jury.

Investigator N. J. Neal, a police officer with the City of Lawrenceville, also identified defendant as the person who sold suspected crack cocaine to Detective Lamphier. Investigator Neal has known defendant for 20 years because they grew "up in basically the same area, [and went to] the same school, same high school." Gregory Smith, a forensic scientist at the State Crime Laboratory, identified State's Exhibits 3 and 4 as containing .05 grams of chunky white material and that each was "positive for cocaine. . . ." Sergeant Jose Diaz, with the Gwinnett County Police, gave evidence of defendant's similar transactions in April 1991, where "the Defendant came up to [Sergeant Diaz's] car and basically said, what are you looking for? [Sergeant Diaz] said a 20 cent piece, which is $20 worth of crack cocaine. [Defendant] opened his hand. In his hand there [were] two or three pieces. [Sergeant Diaz] picked one, handed [defendant] $20 and drove off." Investigator T. G. Bartick of the Gwinnett County Police Department related similar instances from May 1991.

Defendant's motion for new trial was denied. His subsequent motion for an out-of-time appeal was granted. *Held*:

1. Defendant moved in limine to "exclude any testimony . . . regarding the examination and the testing of the substance[s] . . . done at the State Crime Lab," on the ground that written test results had not been produced pursuant to defendant's pre-arraignment demand under former OCGA § 17-7-211. According to Gregory Smith

from the State Crime Laboratory, he first tested the cocaine in February 1994. His notes indicate that he forwarded the written test results on State's Exhibits 1 and 2 to "[t]he County Police Department in Gwinnett County, Gwinnett County D.A. Superior Court and Gwinnett County Solicitor State Court."

On the Thursday before trial, Smith "was notified that [he] would have to re-analyze [the white chunky] substances [in State's Exhibits 3 and 4]." In the presence of his supervisor, Terry Mills, Smith retrieved "the evidence out of the vault. . . ." These samples had been assigned to Patricia Caldwell, another forensic scientist. But Patricia Caldwell left the employ of the State Crime Laboratory before this trial. "She's been gone about 15 months. . . ." Smith completed his own analysis "[e]arly Tuesday morning [and had] not issued any written or oral report." That is, Smith was called to testify "without having had an opportunity to complete a [written] report."

The motion in limine was granted in part, excluding the 1994 test results on State's Exhibits 1 and 2, effectively eliminating Counts 1 and 2. But the trial court concluded there was no attempt by the State's attorney to circumvent the discovery rules and denied the motion regarding test results performed by Gregory Smith shortly before trial on State's Exhibits 3 and 4, where his test results had not been reduced to writing. Although Smith was on the original witness list supplied to the defense by the State, the trial court granted the defense an approximate two-hour continuance to interview the witness from the State Crime Laboratory.

In two related enumerations of error, defendant contends the trial court first "erred in allowing the testimony from a GBI chemist regarding tests of substances allegedly seized from [defendant] which [test results] were not reduced to writing." Second, he contends the trial court further "erred in allowing testimony from [that same] GBI chemist regarding tests of substances allegedly seized from [defendant] which [test results] were not produced for [defendant] before trial, but [were] available for twenty-six months."

(a) Former OCGA § 17-7-211 applied only where there was a written report. *Law v. State*, 251 Ga. 525, 528 (2) (307 SE2d 904). With respect to State's Exhibits 3 and 4 in the case sub judice, there was none. "The statute [did] not prohibit the prosecution from introducing evidence of scientific tests performed immediately prior to or during the trial absent a showing that the prosecution attempted to circumvent the discovery process. *Carey v. State*, 257 Ga. 134 (3) (356 SE2d 507) (1987) and cit.; *Perry v. State*, 255 Ga. 490 (3) (339 SE2d 922) (1986)." *Wellborn v. State*, 258 Ga. 570, 571 (1), 572 (372 SE2d 220). The trial court's determination that the prosecution had not attempted to circumvent the discovery process is amply supported by

the record. Consequently, defendant's first enumeration is without merit.

(b) A scientific report subject to exclusion for the State's failure to make pretrial disclosure under the mandate of former OCGA § 17-7-211 meant " 'reports that would be used as scientific evidence by the prosecution in its case-in-chief or in rebuttal against the defendant.' " *Law v. State*, 251 Ga. 525, 526 (1), supra.

Inasmuch as the trial court excluded test results performed by Smith in 1994 on State's Exhibits 1 and 2, because those results were not forwarded to the defense, defendant's second enumeration is not supported by the record. The contention that Smith's *testimony* of his own analysis of State's Exhibits 3 and 4 should be excluded because *reports* obtained by the former employee, Patricia Caldwell, were not disclosed is without merit. This is especially so, since defendant made no attempt to interview Smith before trial yet the trial court granted a brief recess and gave defense counsel ample time to interview Smith before he testified. Neither is there any contention that Smith's analysis differed in any material way from Caldwell's.

2. Defendant's third enumeration contends the trial court erred in admitting the cocaine purchased from him, over his "chain of custody" objection.

"Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody which is adequate to preserve the identity of the evidence as that seized and show that there has been no tampering or substitution." *Staples v. State*, 209 Ga. App. 802, 805 (5) (434 SE2d 757). The State is not required to show that the substance was guarded every minute. *Sims v. State*, 213 Ga. App. 151 (1), 152 (444 SE2d 121). In the case sub judice, the State Crime Laboratory procedures for identifying, handling, and securing evidence adequately showed the chain of custody, and so, in the absence of some physical evidence of tampering or substitution, the trial court did not err in admitting the cocaine over this objection. Id.

3. Defendant complains the trial court erred in failing to instruct the jury on chain of custody. For aught that appears of record, however, defendant filed no supplemental written request to instruct the jury on anything regarding chain of custody.

Uniform Superior Court Rule 10.3 requires all requests to charge be submitted in writing before trial. Although Rule 10.3 "includes an exception for 'additional requests . . . to cover unanticipated points which arise thereafter,' it does not provide that such requests may be oral." *Bullock v. State*, 202 Ga. App. 65, 66 (1) (413 SE2d 219). Consequently, the trial court did not err in failing to charge on chain of custody. Accord *Henry v. State*, 265 Ga. 732, 737 (6) (462 SE2d 737) (failure to submit written request for charge on felony murder as lesser offense included within indicted crime of malice murder).

4. The jury had been sworn (and so jeopardy had attached) by the time the trial court ruled that Gregory Smith's analysis of State's Exhibits 1 and 2 was not admissible. The State was barred by the double jeopardy provisions of the Georgia and U. S. Constitutions from pursuing Counts 1 and 2. Although the trial court charged that the indictment itself is not evidence of guilt, nevertheless, these two additional (and now extraneous) accusations pointed to defendant like unauthorized similar crimes evidence, impermissibly reflecting on defendant's character. Consequently, in our view, the trial court erred in refusing to redact the indictment to remove reference to Counts 1 and 2 before sending the indictment out with the jury to deliberate on Counts 3, 4, and 5. But we must test for harm as well as error.

" '(The Supreme Court of Georgia) has adopted the highly probable test when determining if an error is harmless. If it is highly probable that the error did not contribute to the judgment then the error is harmless. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).' *Owens v. State*, 248 Ga. 629, 631 [(284 SE2d 408)]. 'The proper test to determine whether error is harmless (due to overwhelming evidence of guilt) is not whether there is sufficient other evidence to convict but whether "it is highly probable that the error did not contribute to the judgment" (Cit.)' *Ragan v. State*, 264 Ga. 190, 192 (3) (442 SE2d 750)." *Snelling v. State*, 215 Ga. App. 263, 266 (1) (c) (450 SE2d 299). In the case sub judice, defendant was identified in court by Detective Lamphier, was captured on videotape, was identified by Investigator Neal, who is an acquaintance of defendant's from high school, and was further identified as the subject in previous petty drug sales via admissible evidence of similar transactions. We conclude this overwhelming identification evidence rendered harmless the erroneous failure to redact the indictment, in that it is highly probable that error did not contribute to the jury's verdicts. *Bohannon v. State*, 208 Ga. App. 576, 580 (2) (d) (431 SE2d 149).

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 6, 1997.

*Carla E. Brown*, for appellant.
*Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney*, for appellee.